UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

| | | |
|---|---|---|
| WALTER JOE HARPER, | ) | |
| Plaintiff, | ) ) ) | Civil Action No. 5:08-CV-403-KKC |
| vs. | ) ) ) | |
| UNITED STATES OF AMERICA, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Walter Joe Harper is an individual confined in the Federal Medical Center in Lexington, Kentucky. Harper filed a complaint under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* ("FTCA") asserting that the Bureau of Prisons ("BOP") was negligent in assigning him - a paraplegic with no feeling below the waist - to a bunk bed touching an active radiator, resulting in a severe burn to his foot while he slept. Because the BOP's decisions regarding bunk assignments are grounded in policy considerations, Harper's claim falls within the "discretionary function exception" to the FTCA, and must be dismissed.

I.   **FACTUAL BACKGROUND**

Harper indicates that he is a 50-year old paraplegic with no sensation below the waist as a result of a prior unrelated accident. Shortly after his arrival at FMC-Lexington in 2005, BOP staff who were fully aware of his medical conditions assigned him to a lower bunk in cell A02-121L, a handicapped-accessible cell with 6 inmates and 2 radiators. FMC-Lexington is a corrections facility built in the 1930s which is heated through a system of steam boilers and radiators, with each room containing one to three fixed radiators. Harper's cell contains two radiators. The radiator near

Harper's bed is located along its side, not either end, no more than 4.5 inches away from the bed and 3 inches below the edge of the bed.

On December 8, 2007, Harper noticed that there was a blister or burn on his left toe. At the time he didn't know how he suffered the injury. On December 11, 2007, Harper sought treatment for the blister at sick call. Harper did not come to the followup appointment scheduled for December 14, 2007. On December 18, 2007, Harper again sought treatment for the blister at sick call, and was provided medical supplies to dress the injury. On December 26, 2007, medical staff noted in his records that the blister seemed to be healing well.

On January 2, 2008, Harper discovered severe burns on his right foot and heel. Harper indicates that he concluded at that time that this injury was caused by his foot coming into contact with the radiator while he slept. However, it appears he did not seek treatment for the injury until January 7, 2008, when he revealed the burns to medical staff during a previously-scheduled appointment at the wound care clinic. Medical staff began treatment for the injury at that time.

Harper indicates that the burns have been very slow to heal and require extensive daily care to promote healing. Further, Harper suggests that the injury weakened his immune system causing him to contract an infection in other parts of his body, causing him to suffer from fever and soreness. Finally, Harper indicates that he now suffers from depression and poor mood as a result of this injury and concerns regarding his susceptibility to injury.

On May 26, 2008, Harper sent a request for administrative settlement of his claim to the BOP for consideration and review, noting the burns and his belief that they were caused by his bed being in such close proximity to the radiator. The BOP denied that request by letter dated June 28, 2008.

Harper filed his Complaint in the present case on October 20, 2008. In it, Harper alleged that "[t]he placement of any bunk or bed directly adjacent to an active radiator is a dangerous potential for serious injury, even if such bed is assigned to a person with normal feeling. It is much more dangerous a prospect for a paralyzed person with no feeling in his lower extremities." He also says "[b]unk and bed assignments are the sole discretion of the Unit Counselor, Case Manager and/or Unit Manager (the "Unit Team") and for the most part never considers the inmates feelings or needs." [Record No. 2 at ¶¶ 23, 24]. In the first substantive paragraph under "Count One - Negligence," Harper states "The placement assignment of the Plaintiff in the bunk adjacent to the heat was negligent and indifferent to Plaintiff's condition because the potential risk was known or should have been known by Unit Team members." [Record No. 2 at ¶27]

## II. DISCUSSION

### A. Summary Judgment Standard.

Rule 56 requires the entry of summary judgment for the moving party if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992). The rule permits a defendant to challenge the viability of the plaintiff's claim by asserting that at least one essential element of plaintiff's claim is not supported by legally-sufficient evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). The defendant does not need present his own evidence to support this assertion, but need only point to the absence of evidence favoring the plaintiff. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005). In response, the plaintiff cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrate that factual questions remain for trial. *Hunley*

*v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003). If the totality of the evidence submitted -- viewed in a light most favorable to the plaintiff with the benefit of any reasonable factual inferences which can be drawn in his favor, *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005) -- "would require a directed verdict for the moving party," summary judgment must be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). If the applicable substantive law requires the plaintiff to meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993).

  B. <u>FTCA claim</u>.

  Under the FTCA, the United States is "liable in tort for certain damages caused by the negligence of any employee of the Government 'if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Johnston v. United States*, 85 F.3d 217, 219 (5th Cir. 1996) (quoting 28 U.S.C. § 1346(b)). Thus if a federal employee's conduct in Kentucky would render him or her liable for negligence under Kentucky law, the United States may be held accountable in tort under the FTCA.

  However, the FTCA permits the exercise of subject matter jurisdiction over such a claim only if it has already been presented to the agency for administrative settlement and the agency has denied the request. 28 U.S.C. § 2675(a); *Garrett v. United States*, 640 F.2d 24, 25 (6th Cir. 1981). If the putative plaintiff failed to file an administrative claim and receive a denial from the agency before filing suit, the FTCA mandates the dismissal of a suit against the United States. *McNeil v. United States*, 508 U.S. 106 (1993).

  In its motion for summary judgment, the United States seeks dismissal of several claims

arguably presented in Harper's complaint related to the cleanliness of the prison or the shower area or the mental health care he received following the injury. Harper appears to disclaim the pursuit of any such claims other than his core allegation regarding the burn he received on his foot. [R. 17, Response at pgs. 1, 4] ("The Plaintiff raises no cause of action relating to the sanitary conditions of an aged and failing, vermin infested structure that is probably impossible to ever make sanitary. ...") While Harper also appears to challenge the characterization of his claim as relating to his bed/cell assignment, [R. 17, Response at pg. 2] ("Plaintiff never raised a 'claim' concerning bed/cell assignment; ..."), both his Complaint and Response make clear that this is an accurate characterization of his claim. [R. 2 at ¶27; R. 17, Response at pgs. 4-5] ("The Plaintiff's complaint stems from the B.O.P.'s negligence in placing him in a bed by an active radiator and then when he does get burned on said radiator everyone denies responsibility and points their finger at him.") Finally, apart from Harper's present statements regarding his allegations, it is also clear that he only administratively exhausted his claim with respect to his initial injury, the burn on his foot, under the FTCA, and any other claims would have to be dismissed for lack of subject matter jurisdiction. 28 U.S.C. § 2675(a); *Garrett*, 640 F.2d at 25.

With respect to his claim that BOP officials were negligent in assigning him to a bunk right next to a radiator, the United States asserts that the claim is barred by the "discretionary function" exception to the general waiver of sovereign immunity of the FTCA. The relevant provision states:

The provisions of this chapter and section 1346(b) of this title shall not apply to--

(a) Any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). This exception applies where the act for which liability is sought to be imposed

involves "an element of judgment or choice," and the judgment involved "is of the kind that the discretionary function exception was designed to shield." *United States v. Gaubert*, 499 U.S. 315, 322 (1991). If the exception applies, it divests the Court of subject matter jurisdiction over the claim. *Rich v. United States*, 119 F.3d 447, 450 (6th Cir. 1997).

The discretionary function exception only applies where the challenged governmental action is the product of "judgment or choice," meaning the official's course of action is not mandated by a specific statute or regulation, and where the judgment that the official is therefore required to make is "of the kind that the discretionary function exception was designed to shield," - meaning one grounded in the competing considerations of public policy. *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991). The purpose of the exception is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Gaubert*, 499 U.S. at 323. Finally, when the relevant policy allows government employees to exercise discretion, the government enjoys a presumption that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 324.

The United States has properly established that, while staff determine an inmate's security classification and assign him or her to a particular facility pursuant to 18 U.S.C. § 3621 as implemented by Program Statement 5100.08, *Inmate Security Designation and Custody Classification* (2006), neither the statute nor regulation mandate a particular course of action with respect to a particular inmate. In sum, cell assignments are made in the reasoned discretion of the Unit Team. In Harper's case, after he was designated to FMC-Lexington, a Case Management Coordinator worked with the Unit Teams and Unit Managers to determine where to assign him in light of his medical needs and security classification.

Because these officials assigned Harper through the exercise of their discretion, the remaining question is whether that discretion was grounded in considerations of public policy of a kind that the discretionary function was designed to protect. The United States correctly points out that such assignments necessarily implicate the balancing of competing policy considerations, such as the inmate's personal safety and medical needs, the facility's available resources, the safety and medical needs of other prisoners, the security and medical staff, and the public. Such considerations unquestionably fall within the discretionary function exception, and numerous courts have properly held that such decisions cannot be subjected to review in a tort action under the FTCA. *Ballester v. United States*, 2006 WL 3544813 (N.D.Ga. 2006) (BOP's decision to place plaintiff in cell with another inmate who subsequently assaulted him fell within discretionary function exception to FTCA); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) (decisions regarding inmate classification and placement fall within the discretionary function exception); *see also Paulino-Duarte v. United States*, 2003 WL 22533401 (S.D.N.Y. 2003) (discretionary function exemption barred inmate's claim under FTCA that BOP was negligent in failing to put guardrails on top bunk or to assign him to top bunk); *Bultema v. United States*, 359 F.3d 379 (6th Cir. 2004) (same).

Because the decision directly challenged by Harper's allegations is precisely the sort of policy determination Congress meant to insulate from review through tort litigation, the Court concludes that his claim falls within the discretionary function exception under 28 U.S.C. § 2670. Accordingly, Harper's FTCA claim will be dismissed for lack of subject matter jurisdiction.

### III. CONCLUSION

The Court being sufficiently advised, it is **ORDERED** as follows:

1. Defendant's Motion to Strike Plaintiff's Record 18 [R. 20] is **DENIED**. The United

States' tendered Reply to Plaintiff's Responses [R. 24-2] is accepted for filing and was considered in the course of reviewing its motion for summary judgment.

2. The United States' Motion to Dismiss, or in the alternative, for Summary Judgment [R. 15] is **GRANTED**.

3. Plaintiff's Complaint [R. 2] is **DISMISSED WITH PREJUDICE.**

4. Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Defendant.

Dated this 30th day of September, 2009.

Signed By:
*Karen K. Caldwell* KKC
**United States District Judge**